UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LILIANA DEL CISNE RUEDA TORRES,

                Petitioner,

v.

LADEON FRANCIS, et al.,

                Respondents.

25 Civ. 8408 (DEH)

**OPINION AND ORDER**

---

DALE E. HO, United States District Judge:

On October 9, 2025, Lilliana del Cisne Rueda Torres ("Petitioner" or "Ms. Rueda Torres") was detained by Immigration and Customs Enforcement ("ICE") following an immigration court proceeding at 26 Federal Plaza, New York, N.Y. Through a next friend, Ms. Rueda Torres filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the lawfulness of her detention and seeking, *inter alia*, her immediate release from ICE custody. *See* Pet. for Writ of Habeas Corpus ("Petition"), ECF No. 1. For the reasons stated below, the Petition is **GRANTED**.

## BACKGROUND

Lilliana del Cisne Rueda Torres fled Ecuador for the United States because of gang persecution. Petition ¶ 12. She was apprehended by Customs and Border Protection ("CBP") after crossing the border into Texas on September 28, 2022 and released that same day on humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5). *See* Decl. of Deportation Officer Yi Jiang ("Jiang Decl.") ¶ 4, ECF No. 11; Petition ¶ 13. She was then directed to report to an ICE office within 60 days. Jiang Decl. ¶ 4.

On October 31, 2022, Ms. Rueda Torres reported to the ICE office in Newark, New Jersey. She was served with two documents: (1) a Form I-200 warrant for her arrest and (2) a Notice to

Appear ("NTA") charging her as removable and ordering her to appear before an Immigration Judge in Newark. *See* ECF No. 9, Exs. 2-3. The Form I-200 warrant was issued pursuant to Section 236 of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1226(a). *See* ECF No. 9, Ex. 2. The NTA charging her as removable designated her as an "an alien present in the United States," and not as "an arriving alien." *See* ECF No. 9, Ex. 3. ICE released her on her own recognizance, Petition ¶ 13, again pursuant to "section 236 of the [INA]." ECF No 9, Exs. 4-5. Both the Notice of Custody Determination and Release on Recognizance use "Section 236 of the Immigration and Nationality Act" as the relevant statutory authority. *Id*.

Following her release, Ms. Rueda Torres had a series of *pro se* appearances in immigration court. In August 2023, she filed an application for asylum on behalf of herself and children. Jiang Decl. ¶ 10. She was also granted a change of venue to Manhattan, as she had recently moved there. *Id*. She continued to appear for hearings in 2024, which were repeatedly adjourned to allow her time to retain counsel. *Id*. ¶¶ 11, 12, 15.

Separate from her immigration proceedings, on February 21, 2025, Ms. Rueda Torres was arrested on two charges: Attempted Petit Larceny, PL 155.25, and Attempted Criminal Possession Stolen Property – Fifth Degree, PL 165.40. *See* ECF No. 9, Ex. 6. ICE filed an immigration detainer the day after her arrest. Jiang Decl. ¶ 14. The New York County District Attorney's Office, however, "declined to prosecute" Ms. Rueda Torres, and her record was ultimately sealed. Decl. of Melissa Lim Chua ("Chua Decl.") ¶ 6, ECF No. 23; *see also id*. at Ex. 1, Letter from New York District Attorney's Office. Ms. Rueda Torres has no criminal convictions. Petition ¶ 15. ICE took no other action for nearly 10 months after her arrest, and Ms. Rueda Torres's immigration proceedings continued as normal.

During the pendency of her asylum application, Ms. Rueda Torres lived with her husband and three minor children, one of whom is a two-year-old U.S. citizen. Petition ¶ 19. She worked

as a machine operator making plastic packaging and was a regular and active member of her church community. Chua Decl. ¶ 12. She alleges that, without her wages, her family faces grave financial hardships. Petition ¶ 19.

On October 9, 2025, Ms. Rueda Torres again appeared *pro se* before an immigration judge at 26 Federal Plaza, and her case was again adjourned, this time until September 23, 2026. Petition ¶¶ 16-17. But after the hearing, ICE, without any notice, took her into custody and revoked her release on recognizance. Petition ¶¶ 17-18. There is no indication that any kind of individualized custody determination was made at that time. She was simply issued an arrest warrant, again citing Section 236 of the INA as the basis for her detention. ECF No. 9, Ex. 7. Ms. Rueda Torres alleges that her detention was part of a widespread practice of detaining asylum seekers following their immigration hearings. Petition ¶¶ 20-23.

The same day that she was taken into custody, Ms. Rueda Torres filed[1] a habeas petition challenging her detention as unlawful and seeking an order requiring her immediate release, or in the alternative, the provision of a bond hearing. Petition at 9-10. On October 10, Ms. Rueda Torres was transferred to the South Louisiana ICE Processing Center. Jiang Decl. ¶ 17. On October 11, this Court ordered that Ms. Rueda Torres not be removed from the country to preserve the Court's jurisdiction. ECF No. 4.

On October 14, this Court ordered Respondents to show cause as to why Ms. Rueda Torres's Petition should not be granted pursuant to this Court's decision in *Lopez Benitez v. Francis*, 25 Civ. 5937, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025), which held that, before the Government may detain a noncitizen on a discretionary basis under 8 U.S.C. § 1226(a), the Government must "make an individualized custody determination" as to that person. *Id.* at *10

---

[1] The Petition was filed through a next friend. *See* Petition at 11-12.

(citing, *inter alia*, *Velesaca v. Decker*, 458 F. Supp. 3d 224, 241 (S.D.N.Y. 2020)).  Order to Show Cause, ECF No. 6.  The Government responded on October 17, 2025, and the Court subsequently ordered that counsel be appointed to assist Ms. Rueda Torres' litigation of her Petition.  *See* ECF Nos. 9-11, 14.  Counsel appeared on October 30 and filed a Reply Brief in support of her Petition on November 7.  ECF No. 22.

## DISCUSSION

This case turns on whether Ms. Rueda Torres was detained on October 9, 2025 pursuant to one of two statutory provisions generally requiring mandatory detention of certain noncitizens: (1) Section 235 of the INA, codified at 8 U.S.C. § 1225(b), which provides for mandatory detention of an "arriving alien" who is "seeking admission" to the United States and is "not clearly and beyond a doubt entitled to be admitted"; or (2) the recently-enacted 8 U.S.C. § 1226(c), which requires detention for individuals based on certain criminal conduct.  If Ms. Rueda Torres is subject to mandatory detention under either of these provisions, then her Petition, on the facts presented here, must be denied.

But if instead Ms. Rueda Torres is subject to detention on a *discretionary* basis under a different provision—8 U.S.C. § 1226(a), which generally "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings," *Jennings v. Rodriguez*, 583 U.S. 281, 288-89 (2018)—then her detention violates the Due Process Clause, because she was afforded no individualized assessment, such as a determination regarding flight risk and/or danger to the community or an opportunity to appeal the Department of Homeland

Security's ("DHS") detention decision to an immigration judge. *See Lopez Benitez*, 2025 WL 2371588, at *15.[2]

In their Opposition, Respondents do not dispute the latter point—*i.e.*, that if Ms. Rueda Torres is not subject to mandatory detention, then her Petition must be granted under *Lopez Benitez*. *See generally* Respondents' Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus ("Opposition") at 9, ECF No. 10.[3] Instead, Respondents assert that Ms. Rueda Torres was subject to mandatory detention as a noncitizen who is "seeking admission," under § 1225(b), or in the alternative, for criminal conduct under § 1226(c). The Court takes each of Respondents' arguments in turn.

I. **Detention under § 1225(b)**

8 U.S.C. § 1225(b)(2)(A) ("§ 1225" or "§ 1225(b)") generally requires mandatory detention of certain noncitizens "seeking admission" to the country. By contrast, 8 U.S.C. § 1226(a) ("§ 1226" or "§ 1226(a)") provides for detention of other noncitizens who are "already

---

[2] Numerous courts have similarly held that detention on a discretionary basis pursuant to § 1226(a) requires such an individualized assessment. *See, e.g.*, *Martinez v. Hyde*, 25 Civ. 11613, 2025 WL 2084238, at *9 (D. Mass. July 24, 2025); *Gomes v. Hyde*, 25 Civ. 11571, 2025 WL 1869299, at *8 (D. Mass. July 7, 2025); *Vasquez Garcia v. Noem*, 25 Civ. 02180, 2025 WL 2549431 (S.D. Cal. Sep. 3, 2025); *Lopez-Campos v. Raycraft*, 25 Civ. 12486, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Kostak v. Trump*, 25 Civ. 01093, Doc. 20 (W.D. La. Aug. 27, 2025); *Benitez v. Noem*, 25 Civ. 02190, Doc. 11 (C.D. Cal. Aug. 26, 2025); *Leal-Hernandez v. Noem*, 25 Civ. 02428, 2025 WL 2430025 (D. Md. Aug. 24, 2025); *Romero v. Hyde*, 25 Civ. 11631, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Arrazola-Gonzalez v. Noem*, 25 Civ. 01789, 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); *Aguilar Maldonado v. Olson*, 25 Civ. 3142, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Dos Santos v. Noem*, 25 Civ. 12052, 2025 WL 2370988 (D. Mass. Aug. 14, 2025); *Rocha Rosado v. Figueroa*, 25 Civ. 02157, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted* 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Maldonado Bautista v. Santacruz*, 25 Civ. 01874, *13 (C.D. Cal. July 28, 2025).

[3] *Contrast with Samb v. Joyce*, 25 Civ. 6373, Mem. in Opp. to Pet. at 4, ECF No. 8 (S.D.N.Y. Aug. 7, 2025) (incorporating by reference all arguments presented by the Government in opposition in *Lopez Benitez*, and reserving all rights including with respect to appeal).

in the country" on a discretionary basis.[4] *Lopez Benitez*, 2025 WL 2371588 at *2 (citing *Jennings*, 583 U.S. at 288-89. The precise line between these two categories is unnecessary to define here because, as Respondent's documents submitted in this matter clearly show, Ms. Rueda Torres was detained on October 9, 2025 pursuant to § 1226(a). *See* ECF No. 9, Ex. 7. That is consistent with how DHS has treated her for approximately three years, starting with her first check-in at an ICE office in October 2022. *See* ECF No. 9, Exs. 2-5. At that initial check-in, ICE issued a warrant for Ms. Rueda Torres's arrest under § 1226(a), *see id.*, Ex. 2, but then made a discretionary determination to release her on her own recognizance under that same provision, *see id.* Exs. 4-5. Thus, Respondents have, for three years, consistently treated Ms. Rueda Torres as subject to detention only as a matter of discretion under § 1226(a). They cannot reverse course now and claim that she is an arriving alien "seeking admission" the United States who is subject to mandatory detention under § 1225(b). *See Lopez Benitez*, 2025 WL 2371588, at *3 (That "DHS has consistently treated [the Petitioner] as subject to detention on a discretionary basis under § 1226(a) is fatal to Respondents' claim that she is subject to mandatory detention under

---

[4] Section 1226(a) provides that, for a noncitizen who is "arrested and detained" "[o]n a warrant issued by the Attorney General," the Attorney General (1) "may continue to detain" the arrested noncitizen, (2) "may release" the noncitizen on "bond," or (3) "may release" the noncitizen on "conditional parole." 8 U.S.C. §§ 1226(a)(1)-(2).

Section 1225(b) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained[.]" 8 U.S.C. § 1225(b)(2)(A) (emphasis added). "A noncitizen detained under Section 1225(b)(2) may be released only if he is paroled 'for urgent humanitarian reasons or significant public benefit' pursuant to 8 U.S.C. § 1182(d)(5)(A)." *Gomes v. Hyde*, 25 Civ. 11571, 2025 WL 1869299, at *2 (D. Mass. July 7, 2025) (quoting *Jennings*, 583 U.S. at 300). Such parole "into the United States" permits a noncitizen to physically enter the country, 8 U.S.C. § 1182(d)(5)(A), subject to a reservation of rights by the government that it may continue to treat the noncitizen "as if stopped at the border," *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020).

§ 1225(b).").[5]  Indeed, Ms. Rueda Torres has now been living in this country on her own recognizance for approximately three years. She has a child who is U.S. citizen, a job, and is an active member of her church community. She is "already in the country" under § 1226(a), *Jennings*, 583 U.S. at 288-89, not someone who is still "seeking admission" under § 1225(b). *See Lopez Benitez*, 2025 WL 2371588, at *5-9.

Respondents argue that this case is distinguishable from *Lopez Benitez* because, prior to her first ICE check-in, Ms. Rueda Torres was initially subject to mandatory detention under § 1225(b). *See* Opposition at 5-8. After she was first encountered by CBP in September 2022, she was released on humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5), *see* Jiang Decl. ¶ 4; ECF No. 9, Ex. 1, which provides that "such parole of [an] alien shall not be regarded as an admission of the alien," and that a parolee "shall continue to be dealt with in the same manner as

---

[5] "Across the country, the government has repeatedly . . . detained noncitizens pursuant to § 1226(a), then, only afterward, argued that they were instead detained under § 1225(b)(2) and ineligible for bond. That has led to a raft of decisions, most of which have rejected the government's position." *J.G.O. v. Francis*, 25 Civ. 7233, 2025 WL 3040142, at *2 (S.D.N.Y. Oct. 28, 2025); *see also Sanchez v. Wofford*, 25 Civ. 01187, 2025 WL 3089712, at *7 (E.D. Cal. Nov. 5, 2025) (relying on how Government treated petitioner to support statutory classification of detention); *Gomes*, 2025 WL 1869299, at *7-8 (relying on statute cited in warrant as supportive of detention being under § 1226 rather than under § 1225); *Maldonado v. Cabezas*, 25 Civ. 13004, 2025 WL 2985256, at *4 (D.N.J. Oct. 23, 2025) (using DHS's prior classification of petitioner at bond hearing to support detention under § 1226(a)); *J.U. v. Maldonado*, 25 Civ. 4836, 2025 WL 2772765, at *5 (E.D.N.Y. Sep. 29, 2025) (relying on how DHS's records related to petitioner's prior arrest and detention were pursuant only to § 1226 and not § 1225(b)); *Rico-Tapia v. Smith*, 25 Civ. 379, 2025 WL 2950089, at *7 (D. Haw. Oct. 10, 2025) (relying on Government's prior order to reinforce detention as being under § 1226(a)); *Artiga v. Genalo*, 25 Civ. 5208, 2025 WL 2829434, at *6 (E.D.N.Y. Oct. 5, 2025) (finding detention to be pursuant to § 1226(a) when DHS's records expressly state the statute); *Zumba v. Bondi*, 25 Civ. 14626, 2025 WL 2753496, at *9 (D.N.J. Sep. 26, 2025) (noting that "[c]ourts have given great weight to the manner in which DHS treated the petitioner in determining which detention statute applies"). The Court is aware of only two decisions reaching the contrary result. *See Chavez v. Noem*, 25 Civ. 02325, 2025 WL 2730228 (S.D. Cal. Sep. 24, 2025); *Vargas Lopez v. Trump*, 25 Civ. 526, 2025 WL 2780351 (D. Neb. Sep. 30, 2025).

that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5). *Cf. Lopez Benitez*, 2025 WL 2371588, at *3 (noting that parole under § 1182(d)(5) "permits a noncitizen to physically enter the country, subject to a reservation of rights by the Government that it may continue to treat the noncitizens as if stopped at the border"). Thus, according to Respondents, Ms. Rueda Torres's initial release on humanitarian parole indicates that she was initially designated as a noncitizen "seeking admission" under § 1225(b), and that she therefore remains subject to mandatory detention under that provision.

This argument is unavailing. Ms. Rueda Torres's "initial [encounter in 2022] is not what is at issue in this case. It is [her] 2025 arrest" and subsequent detention that are challenged here. *Lopez Benitez*, 2025 WL 2371588, at *8. And "regardless of what [Mr. Rueda Torres's] designation *could have been* when [she] was initially arrested in [2022], there is no dispute that . . . [her] recent warrant from last month was . . . issued subject to § 1226," and that "Respondents detained [her] on that basis." *Id.* *4; *see also Gomes*, 2025 WL 1869299, at *7–8 (explaining that, where a petitioner is taken into custody under a warrant issued under § 1226, their detention is pursuant to that statute). Respondents seem to argue that, because Ms. Rueda Torres was initially released on humanitarian parole, she will always remain designated as an alien "seeking admission" who is subject to mandatory detention under § 1225(b). *See* Opposition at 7 n.1 (arguing that "Rueda Torres remains an applicant for admission, notwithstanding her prior release on humanitarian parole."). But she has not *remained* on humanitarian parole since that time. Rather, beginning in October 2022, she was released on her own recognizance, a different form of release that is reserved for individuals subject to discretionary detention determinations under § 1226(a). While the precise circumstances of her release at that time are not entirely clear from the record, ICE could only have released her on her own recognizance under § 1226(a) following an individualized determination that she was neither a flight risk nor a danger to the community. *See*

8

8 C.F.R. § 1236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien . . . provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."); *see also Lopez Benitez*, 2025 WL 2371588, at *10. Such release on one's own recognizance is not available under § 1225(b), which generally requires detention unless a person is paroled into the country for humanitarian reasons. *See Jennings*, 583 U.S. at 300. And for the next approximately three years including her recent arrest and detention last month, Respondents have—with the exception of in their Opposition brief in this case—continued to treat her as a noncitizen already present in the United States, subject to § 1226(a)'s discretionary detention framework.[6]

In sum, the Court cannot credit Respondents' argument that Ms. Rueda Torres is subject to mandatory detention as a noncitizen "seeking admission" under § 1225(b). After she was paroled into the country, her status was changed by ICE, which released her on her own recognizance as a matter of discretion under § 1226(a). She then resided in the United States for approximately three years. And then, last month, ICE arrested and detained her on a warrant under § 1226(a). Having treated her as noncitizen who is "already in the country" under § 1226(a) and

---

[6] Even if Ms. Torres Rueda had remained on humanitarian parole since 2022—which she did not—the termination of such parole without an individualized determination would raise other legal concerns: "[t]o revoke parole, . . . a DHS official with authority must decide either that the 'the purpose for which parole was authorized' has been 'accomplish[ed]' or that 'neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen]' in the United States.'" *Mata Velasquez v. Kurzdorfer*, 25 Civ. 493, 2025 WL 1953796, at *10 (W.D.N.Y. July 16, 2025) (quoting 8 C.F.R. § 212.5(e)(2)(i)); *see also Y-Z-L-H v. Bostock*, No. 25 Civ. 965, 2025 WL 1898025, at *7 (D. Or. July 9, 2025). But here, "Respondents do not argue that the purpose of parole was satisfied and they do not contend that they engaged in an individualized analysis to determine whether the purpose of Petitioner's parole had been accomplished." *Orellana v. Francis*, 25 Civ. 04212, 2025 WL 2402780, at *5 (E.D.N.Y. Aug. 19, 2025); *see also Munoz Materano v. Arteta*, 25 Civ. 6137, 2025 WL 2630826, at *17 (S.D.N.Y. Sep. 12, 2025).

permitted her to reside here under that status for the past three years, *Jennings*, 583 U.S. at 288-89, Respondents cannot now turn back the clock and simply revert her classification back to someone who is "seeking admission" to the country under § 1225(b).

## II.    Detention Under § 1226(c)

In the alternative, Respondents assert that Ms. Rueda Torres is subject to mandatory detention under the newly-adopted 8 U.S.C. § 1226(c). This provision mandates detention when an alien in removal proceedings "is charged with," "is arrested for," "is convicted of," "admits committing," or "admits having committed" "burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." 8 U.S.C. § 1226(c). This argument unavailing for several reasons.

First, the assertion that Ms. Rueda Torres' detention stems from her February arrest is entirely *post hoc*. Nowhere in the record did Respondents assert that Petitioner was detained under Section 1226(c), nor do any documents indicate that her October 9 arrest and detention by ICE were linked to her dropped charges from February, nearly eight months prior. "The Court cannot credit Respondents' new position as to the basis for [Ms. Rueda Torres'] detention, which was adopted *post hoc* and raised for the first time in this litigation." *Lopez Benitez*, 2025 WL 2371588, at *5; *cf. Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 21-22, 24 (2020) (holding that, under arbitrary and capricious review in the administrative law context, "[t]he basic rule here is clear: An agency must defend its actions based on the reasons it gave when it acted," not on "impermissible *post hoc* rationalizations").

Second, even if properly invoked, Respondents could not rely on § 1226(c) based on Ms. Rueda Torres' February charges. That is because the text of § 1226(c)(1)(E)(ii) does not provide for mandatory detention where, as here, charges have been dropped. "The plain language makes clear that detention is not mandatory if the criminal charges have been dropped." *Aguilar*

10

*Lares v. Bondi*, No. 25 Civ 01562, Mem. Op. & Order, ECF No. 18 at *9 (E.D. Va. Oct. 29, 2025). In defining the scope of the obligation to detain, Congress used the present tense "*is* charged with," 8 U.S.C. § 1226(c)(1)(E)(ii) (emphasis added), as opposed to "*was* or *has been* charged." "Under common usage of the English language, if criminal charges against someone have been dropped, we would not continue to say the person is 'charged with' that crime, present tense." *Helbrum v. Williams Olson*, 25 Civ. 349, 2025 WL 2840273, at *5-6 (S.D. Iowa Sep. 30, 2025). "Had Congress intended to make detention mandatory for anyone who *was* charged with larceny, it certainly knew how." *Aguilar Lares*, 25 Civ 01562, ECF No. 18 at *9 (emphasis in original) (citing *United States v. Atiyeh*, 402 F.3d 354, 364 (3d Cir. 2025)).

The structure of the statute reinforces its plain meaning. As another district court recently noted, the language in § 1226(c)(1)(E)(ii) tracks the steps of criminal proceedings. "Criminal cases start either with the filing of charges ('is charged with') or the arrest of a person ('is arrested for') pending the filing of such charges." *Helbrum*, 2025 WL 2840273, at *6. "A person cannot be convicted of an offense without first being charged." *Id*. However, Respondents urge an interpretation that requires mandatory detention following any arrest or charge no matter the ultimate disposition of those charges. Such an interpretation would "make the words 'is convicted of' superfluous," as no Defendant could possibly proceed to a conviction without first being charged. *Id.*; *see also Corley v. United States*, 556 U.S. 303, 314 (2009) (citing presumption against superfluous language as one of the "most basic interpretive canons"); *Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme."). Thus, while detention is mandatory immediately following an arrest, it is no longer required if charges are ultimately not filed. Similarly, detention remains mandatory if charges are filed, but it is no longer required if charges are dropped or if a person is acquitted. Any other interpretation would render

11

superfluous the language in the statute requiring detention under circumstances other than when a person "is arrested for" or "is charged with" certain crimes.

Third and finally, § 1226(c) is inapplicable here because the statute does not mandate detention for *attempted* offenses. Ms. Rueda Torres' dropped charges were Attempted Petit Larceny, PL 155.25, and Attempted Criminal Possession Stolen Property – Fifth Degree, PL 165.40. See ECF No. 9, Exh 7. Respondents suggest that attempted petit larceny "constitute[s] the essential elements of . . . larceny" under New York law. Opposition at 13 (citing 8 U.S.C. § 1226(c)(1)(E)(ii)). That is incorrect. In New York, "[a] person is guilty of petit larceny when he *steals* property." N.Y. Penal Law § 155.25 (emphasis added). Section 155.05 of the penal law, titled "Larceny; defined[,]" states that "[a] person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully *takes, obtains or withholds* such property from an owner thereof." *Id*. § 155.05(1) (emphasis added). Clearly, an essential element of "larceny" is the actual taking of property. Ms. Rueda Torres' dropped charges allege only the *attempted* taking of property, which is short of satisfying the essential element of *actual* taking under § 155.25. Again, if Congress intended to mandate detention for attempted forms of the listed crimes, it easily could have done so. *United States v. Maynard*, 743 F.3d 374, 379 (2d Cir. 2014) (Applying the "rule of statutory construction *inclusio unius est exclusio alterius*—that to express or include one thing implies the exclusion of the other" to find that Congress' explicit listing of circumstances in which restitution was permitted necessarily implied that it was not permitted in unlisted circumstances). Thus, for the several stated reasons herein, the Court finds that Ms. Rueda Torres is not subject to mandatory detention under § 1226(c).

**III.    Due Process**

Because Ms. Rueda Torres is not subject to mandatory detention, she is subject to detention only on a discretionary basis under § 1226(a).  *See Lopez Benitez*, 2025 WL 2371588, at *3-9.  In their Opposition, Respondents do not dispute this Court's prior ruling that such detention "requires a valid exercise of DHS's discretion . . . which entails some sort of judgment" on DHS's part.  *Id.* at *11.  But here "there nothing to suggest that DHS exercised any discretion *at all* in detaining [Mr. Rueda Torres]," such as "an individualized assessment as to . . . dangerousness or flight risk, or any kind of process at all sufficient to qualify as a valid exercise of discretion." *Id*. at *11, *13; *see also Samb v. Joyce*, 25 Civ. 6373, 2025 WL 2398831, at *3 (S.D.N.Y. Aug. 19, 2025).  Indeed, Respondents do not suggest otherwise, asserting only that Ms. Rueda Torres was detained because such detention is mandatory.  Thus, for the reasons given in *Lopez Benitez* and *Samb*, the Court holds that Ms. Rueda Torres' arrest and detention on October 9, 2025 violated her rights under the Due Process Clause.  *See Lopez Benitez*, 2025 WL 2371588, at *9-13.

## CONCLUSION

For the reasons stated above, Ms. Rueda Torres' Petition, ECF No. 1, is **GRANTED**. Respondents are **ORDERED** to transport Ms. Rueda Torres (A Number 246-107-679) back to the Southern District of New York no later than Sunday, November 16, 2025, and immediately upon effectuating her transfer, to release Ms. Rueda Torres from custody; and further, to certify compliance with the Court's order by a filing on the docket by that date.  Respondents are directed to inform counsel for Petitioner as to the expected time and place of Petitioner's release.

Respondents are further **ENJOINED** from re-detaining Mr. Rueda Torres without a valid exercise of discretion consistent with this Order.  *Cf. Hyppolite v. Noem*, 25 Civ. 4304, 2025 WL 2829511, at *16 (E.D.N.Y. Oct. 6, 2025).  It is further **ORDERED** that Respondents are **ENJOINED** from denying bond to Ms. Rueda Torres in any subsequent proceeding on the basis

that she must be detained pursuant to: (1) 8 U.S.C. § 1225(b), or (2) 8 U.S.C. § 1226(c) absent a change in relevant circumstances consistent with this Order; and it is further **ORDERED** that, if Ms. Rueda Torres is granted bond, Respondents are **ENJOINED** from invoking the automatic stay provision at 8 C.F.R. § 1003.19(i)(2). *Aguilar Lares*, 25 Civ 01562, ECF No. 19, Order.

Counsel for petitioner may file an application for attorney's fees and costs pursuant to 5 U.S.C. § 504 and 28 U.S.C. § 2412 within the time provided by the Local Rules.

The Clerk of Court is respectfully directed to enter judgement in Petitioner's favor pursuant to F.R.C.P. 58.

SO ORDERED.

Dated: November 13, 2025

       New York, New York

_/s/ Dale E. Ho_

DALE E. HO
United States District Judge
